IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**AMANDA J. CLONCH,**

        **Plaintiff,**

   vs.                                    **Civil Action 2:14-cv-2327**
                                                      **Judge Watson**
                                                      **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

**REPORT AND RECOMMENDATION**

    This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits and supplemental security income.  This matter is now before the Court for consideration of *Plaintiff's Statement of Errors*, ECF 12 ("*Statement of Errors*"), *Defendant's Memorandum in Opposition*, ECF 17 ("*Commissioner's Response*"), and *Plaintiff's Reply to the Defendant's Memorandum in Opposition*, ECF 18 ("*Reply*").

**I.    Background**

    Plaintiff Amanda J. Clonch protectively filed her applications for benefits in January 2011, alleging that she has been disabled since August 1, 2002.  *PAGEID* 72, 234-46.  The applications were denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge.  *PAGEID* 133-58, 162-67, 187-88.

1

An administrative hearing was held on May 24, 2013, at which plaintiff, represented by counsel, testified, as did William J. Kiger, who testified as a vocational expert. *PAGEID* 77-104.

In a decision dated July 5, 2013, the administrative law judge concluded that plaintiff was not disabled from August 1, 2002, through the date of the administrative decision. *PAGEID* 62-72.

Plaintiff was 28 years of age on the date of the administrative law judge's decision. *PAGEID* 72, 179. She has a limited education, is able to communicate in English, and has past relevant work as a cashier and telemarketer. *PAGEID* 70-71. Plaintiff met the insured status requirements of the Social Security Act only through December 31, 2009. *PAGEID* 64. She has not engaged in substantial gainful activity since August 1, 2002, her alleged disability onset date. *Id*.

## II. Evidence of Record[1]

John R. Ellison, D.O., plaintiff's family doctor, examined plaintiff on January 17, 2011, at which time plaintiff weighed 170 pounds. *PAGEID* 347-48. Dr. Ellison diagnosed lumbar spondylosis, chronic pain, and adjustment disorder with anxiety and depressed mood, but he noted that plaintiff's pain and anxiety were controlled through medication. *Id*.

On March 17, 2011, W. Jerry McCloud, M.D., a state agency physician, reviewed the record and completed a physical residual functional capacity assessment. *PAGEID* 124-25. According to Dr. McCloud, plaintiff could lift and/or carry 50 pounds occasionally and

---

[1] The Court's discussion of the evidence is limited to the issues presented in plaintiff's *Statement of Errors*.

2

25 pounds frequently, could stand and/or walk, or sit, for about 6 hours in an 8-hour workday. *PAGEID* 124.  Because of a nonunion of her right clavicle, plaintiff was limited in her ability to push and/or pull and to reach overhead with her upper right extremity; however, plaintiff was not limited in other manipulative abilities, including her ability to handle, finger, and feel. *PAGEID* 125. Plaintiff had no postural, visual, communicative, or environmental limitations. *Id*.

Louis Goorey, M.D., a state agency physician, later reviewed additional evidence and affirmed Dr. McCloud's findings. *PAGEID* 153-54.

On November 4, 2011, Drew C. Apgar, J.D., D.O., F.C.L.M., a state agency medical consultant, consultatively examined plaintiff. *PAGEID* 373.  Plaintiff, at 5' 1 ½" tall, weighed 186 pounds. *PAGEID* 377.  An x-ray of plaintiff's right clavicle showed a plate and screw fixation of a fracture at the distal third of the clavicle that appeared nonunited or, possibly, chronically angulated. *PAGEID* 385.  Dr. Apgar noted that the fusion plate was chronically elevated by approximately one centimeter relative to the clavicle at the medical aspect. *Id*. On clinical examination, plaintiff had intact grasp strength; intact coordination, pinch, and manipulation; and no joint abnormality. *PAGEID* 388.  Plaintiff's gait was steady, deliberate, and weight-bearing. *Id*.  She had no significant compromise in her range of motion except for the hips bilaterally, although Dr. Apgar noted that plaintiff, when distracted, had no difficulty sitting cross-legged and

putting on her sneakers. *Id*. According to Dr. Apgar, plaintiff would have some difficulty with sitting, standing, walking, traveling, lifting, carrying, pushing, and pulling. *Id*. However, Dr. Apgar noted that plaintiff's effort during his examination was "fair;" he viewed the test results as "possibly suspect." *Id*. Dr. Apgar further noted that plaintiff was able to get on and off the examination table without difficulty and showed good posture while seated and standing. *PAGEID* 377. She was able to move around the room and dress and undress without difficulty. *Id*. He diagnosed, *inter alia*, chronic pain syndrome, anxiety with panic features by history, history of cancer with colon resection and chronic diarrhea, and obesity. *PAGEID* 384. He noted further that she was "obese with no mechanical limitations and dyspnea due to obesity." *PAGEID* 377.

On February 17, 2012, Dr. Ellison examined plaintiff, recording plaintiff's weight at 183 pounds. *PAGEID* 404, 406. In March and April 2012, plaintiff complained of poor control of low back pain; Dr. Ellison prescribed additional medication. *PAGEID* 407-12. During a follow-up visit on July 9, 2012, plaintiff reported that her pain was controlled. *PAGEID* 413. Plaintiff's weight was recorded at 168 pounds. *PAGEID* 414. In April 2013, Dr. Ellison reported that plaintiff had normal movement in all extremities; and she weighed 169 pounds. *PAGEID* 859.

### III. Administrative Hearing and Decision

Plaintiff testified that she was 28 years old at the time of the administrative hearing and that she was five feet one inch tall and

weighed 160 pounds. *PAGEID* 82. Plaintiff identified her back pain, chronic diarrhea, right shoulder impairment, and anxiety as the conditions that prevent her from working. *PAGEID* 84-85. Plaintiff sees her family doctor every month and her oncologist every six months. *PAGEID* 85-86. She takes Percocet for her shoulder and back pain, which sometimes helps to reduce her pain. *PAGEID* 86. She underwent back surgery in 2001 and three shoulder surgeries, including the most recent surgery in 2007. *PAGEID* 87-88.

Plaintiff underwent physical therapy for one year after her back surgery and physical therapy for her shoulder after her most recent shoulder surgery. *PAGEID* 88. She had used braces for her back and shoulder, but was not using a brace or any assistive device at the time of the hearing. *PAGEID* 88-89. Plaintiff testified that she experiences daily, constant shoulder and back pain. *PAGEID* 89-90. Although pain medication and lying down relieve the pain, the pain returns when she gets up and walks. *PAGEID* 90. She estimated that her medications reduce her pain level to a six or seven on a ten-point scale. *Id*.

Plaintiff testified that she can sit for up to ten minutes before needing to stand up and move; she was not sure how many total hours she could sit in an eight-hour work day. *PAGEID* 90-91. She could stand for about five or ten minutes at a time for a total of 1 to 1 1/2 hours in a total eight-hour work day. *PAGEID* 91. Lifting a gallon of milk bothers her right shoulder; she has difficulty reaching with her right arm. *Id*.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and a capacity for light work with the following additional restrictions:  only occasional over-the-head right reaching; no working around unprotected heights; no commercial driving; no climbing ropes, ladders, and scaffolds; only occasional climbing of ramps and stairs; an ability to understand, remember, and carry out simple, routine, repetitive tasks using judgment permitting simple, routine-related decisions; and able to interact with the public on only a superficial basis.  *PAGEID* 98-99.  The vocational expert testified that such a claimant could not perform any of plaintiff's past jobs but could perform such light, unskilled jobs as cleaner (approximately 325,000 such jobs in the national economy) and hand packager (approximately 275,000 such jobs in the national economy).  *Id*.  The claimant could also perform such sedentary, unskilled jobs as production worker (approximately 35,800 such jobs in the national economy) and machine operator, tender feeder (approximately 29,100 such jobs in the national economy).  *PAGEID* 99-100.

In his written decision, the administrative law judge found that plaintiff's severe impairments consist of status post right clavicle fracture, lumbar disc disease, and affective and anxiety disorders.  *PAGEID* 64.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to perform light work with the following abilities and limitations:  she is

6

limited to occasional overhead reaching with the right upper extremity; no exposure to unprotected heights, commercial driving, or climbing ladders, ropes or scaffolds; occasional climbing ramps and stairs; performing simple, routine, and repetitive tasks with only simple work-related decisions; and only superficial interaction with the public.  *PAGEID* 65-67.  The administrative law judge relied on the testimony of the vocational expert to find that, with this RFC, plaintiff is able to perform a significant number of jobs in the national economy.  *PAGEID* 71-72.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2002, through the date of this decision.  *PAGEID* 72.

**IV.  Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of*

*Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff argues that the administrative judge improperly failed to consider plaintiff's obesity at every step of the sequential evaluation. *Id*. at 10; *Reply*, pp. 1-2. This Court agrees.

Social Security Ruling 02-01p, 2002 SSR LEXIS 1 (Sept. 12, 2002) ("the Ruling"), explains the Commissioner's policy and protocol in connection with the evaluation of obesity. Obesity may be considered a severe impairment alone or in combination with another medically determinable impairment. *Id*. *T*he Commissioner must perform "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Id*. Moreover, an administrative law judge must also consider the impact of a claimant's obesity on her RFC and, at step five of the sequential analysis, on her ability to perform other jobs that exist in significant numbers in the economy. *Id.; Coldiron v. Commissioner of Social Security,* 391 F. App'x. 435, *442-43 (6th Cir. Aug. 12, 2010).

8

However, the Rule does not "offer[] any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F.App'x 408, *412 (6th Cir. Jan. 31, 2006).

In the case presently before the Court, the administrative law judge's opinion did not assess plaintiff's obesity in the manner contemplated by the Ruling.  Indeed, the administrative law judge made no reference to plaintiff's diagnosed obesity or to the Ruling. He clearly failed to consider the impact of her obesity in combination with her severe impairments.  This is especially significant in light of the fact that the administrative law judge included lumbar disc disease in plaintiff's severe impairments; certainly, some analysis is necessary to determine whether plaintiff's obesity aggravates or compounds this severe impairment. *Cf. Stone v. Comm'r of Soc. Sec.*, No. 3:12cv197, 2013 U.S. Dist. LEXIS 138841, at *7 (S.D. Ohio Sept. 26, 2013) ("[S]ome analysis of the aggravating tendencies on function caused by obesity, in conjunction with and upon all other severe impairments found by the Hearing Officer [including chronic low back], must be performed."). *See also Heighton v. Comm'r of Soc. Sec.*, No. 1:12-cv-38, 2013 U.S. Dist. LEXIS 7783, at *34-35 (S.D. Ohio Jan. 18, 2013).

Noting that the administrative law judge limited plaintiff to a restricted range of light work with postural and environmental limitations, the Commissioner contends that any such oversight on the part of the administrative law judge is immaterial in light of plaintiff's failure to identify evidence in the record showing that

9

her obesity caused greater functional limitations than those provided for in the administrative law judge's RFC assessment. *Commissioner's Response*, pp. 4-5 (citing *Essary v. Comm'r of Soc. Sec'y*, No. 03-6233, 114 F.App'x 662, at *667 (6th Cir. Oct. 28, 2004) ("The absence of further elaboration on the issue of obesity likely stems from the fact that Essary failed to present evidence of any functional limitations resulting specifically from her obesity.")). The Court is not persuaded.

First, the Commissioner's reliance on *Essary* is misplaced. In *Essary*, the administrative law judge expressly considered the claimant's obesity as one of several conditions that "'can reasonably be expected to result in some degree of functional . . . limitations.'" *Essary*, 114 F.App'x 662, at *667. In this case, the administrative law judge made no reference whatsoever to plaintiff's obesity. *Essary* is therefore inapposite.

Moreover, the Court is not persuaded that the record establishes that the administrative law judge's RFC limitations adequately accounted for plaintiff's obesity. Even where "there is no medical opinion of record that plaintiff is significantly limited as a result of her obesity, the complete exclusion of any mention of plaintiff[']s obesity makes it impossible for the Court to tell if the [administrative law judge] actually considered this condition in formulating the RFC." *Heighton*, 2013 U.S. Dist. LEXIS 7783, at *34-35. *See also Sparks v. Colvin*, No. 3:14cv00280, 2015 U.S. Dist. LEXIS 64046, at *16 (S.D. Ohio May 15, 2015) ("More than a passing reference

10

[to obesity] is required."), *adopted by, remanded by Sparks v. Colvin*, No. 3:14cv00280, 2015 U.S. Dist. LEXIS 75758 (S.D. Ohio June 11, 2015); *Crooks v. Comm'r of Soc. Sec.*, No. 12-13365, 2013 U.S. Dist. LEXIS 119532, at *48 (E.D. Mich. July 8, 2013) ("While there is no medical opinion of record that plaintiff is significantly limited as a result of his obesity, the complete exclusion of any mention of plaintiff's obesity makes it impossible for the undersigned to tell if the ALJ actually considered this condition in formulating the RFC."), *adopted by, remanded by Crooks v. Comm'r of Soc. Sec.*, No. 12-cv-13365, 2013 U.S. Dist. LEXIS 119086 (E.D. Mich. Aug. 22, 2013).

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be **REMANDED** for further consideration of plaintiff's obesity consistent with SSR 02-01p, 2002 SSR LEXIS 1.

Having concluded that the action must be remanded, the Court need not and does not address plaintiff's remaining arguments.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object

11

to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).


August 17, 2015                             *s/Norah McCann King*
                                            Norah M<sup>c</sup>Cann King
                                     United States Magistrate Judge